300 So.2d 226 (1974)
Johnny Ray WOMACK et al., Plaintiffs-Appellants,
v.
Pearl Roark RHYMES et al., Defendants-Appellees.
No. 12388.
Court of Appeal of Louisiana, Second Circuit.
September 4, 1974.
Rehearing Denied October 1, 1974.
Writ Refused November 22, 1974.
*227 Cameron C. Minard, Columbia, for plaintiff-appellants.
Theus, Grisham, Davis & Leigh by J. Bachman Lee, Monroe, for defendants-appellees Pearl Roark Rhymes, Robertine Rhymes Cobb, Jane Rhymes Oliver & United States Fidelity and Guaranty Co.
Snellings, Breard, Sartor, Shafto & Inabnett by W. S. Shafto, Jr., Monroe, for defendant-appellee State Farm Mutual Automobile Ins. Co.
Before BOLIN, HALL and WILLIAMS, JJ.
Rehearing En Banc. Denied October 1, 1974.
HALL, Judge.
The accident giving rise to this lawsuit occurred July 6, 1971, at 10:40 p.m. on Louisiana Highway 15 in Richland Parish, when an automobile owned by Johnny Ray Womack, driven by Wanda M. Womack and occupied by Travis Brooks, Michael Brooks, Kimberly Brooks and Billie Womack Brooks, struck an automobile driven by J. D. Wheatley, which had come to a sudden stop in the highway after striking a black cow. Johnny Ray Womack, Wanda M. Womack, Billie Womack Brooks and Travis Brooks, individually and as administrator of his minor children, Michael Brooks and Kimberly Brooks, filed suit for damages against the alleged owners of the cow, Mrs. Pearl Roark Rhymes, Mrs. Robertine Rhymes Cobb and Mrs. Jane Rhymes Oliver and their insurer, The United States Fidelity and Guaranty Company and against State Farm Mutual Automobile Insurance Company, liability insurer *228 and uninsured motorist's insurer of the Womack automobile, alleging the negligence of the owners of the cow and, alternatively, alleging the negligence of Wanda Womack and Wheatley. The Rhymes defendants and their insurer denied ownership of the cow, denied their negligence, alleged the negligence of Wanda Womack as the sole cause of the accident, and pled Wanda Womack's contributory negligence in bar of recovery by her and Johnny Ray Womack. State Farm answered denying any negligence on the part of Wheatley or Wanda Womack and, alternatively, pleading Wanda Womack's contributory negligence in bar of her claims.
After trial, in written reasons for judgment, the district court found: (1) Wheatley was not guilty of any negligence in the operation of his vehicle since the cow suddenly ran into the road from a point too close for him to avoid the accident; (2) Wanda Womack was not guilty of any negligence in the operation of the vehicle she was driving as her actions were reasonable under the circumstances when faced with a sudden peril; (3) the accident was caused solely by the cow's sudden appearance on the highway; (4) plaintiffs failed to prove the cow was owned by defendant, Mrs. Robertine Rhymes Cobb (against whom the claim of ownership was narrowed at trial), or any of the other defendants; and (5) even if the cow was owned by Mrs. Cobb, she discharged her burden of proving she did all things expected of a reasonable and prudent person to prevent her stock from roaming at large and thus established her freedom from negligence. From a judgment rejecting plaintiffs' demands against all defendants, plaintiffs appealed.
On appeal plaintiffs have abandoned their claims based on the negligence of Wanda Womack and Wheatley and, therefore, the liability of State Farm is not at issue. Plaintiffs specify as error the action of the district court in failing to find that Mrs. Cobb was the owner of the cow and in holding that, in any event, she proved her freedom from negligence in allowing the cow to be at large on the highway. Defendants, Mrs. Cobb and her insurer, contend the district court was correct in its finding in these respects and, alternatively, reurge the negligence of Wheatley and of Womack as the cause of the accident.
At the outset we affirm the district court's conclusion that neither driver was negligent and that the sole cause of the accident was the sudden appearance of the cow on the highway.
The Wheatley vehicle was proceeding in an easterly direction on Louisiana Highway 15 within the speed limit. As the automobile reached a point about a mile west of the intersection of Highway 15 and Highway 133, a black cow suddenly ran into the path of the vehicle from the right side of the road. Wheatley, in his attempt to dodge the animal, veered to the left, and when the cow continued to move to the left Wheatley maneuvered the car to the right. The cow turned and also proceeded in the same direction as the vehicle, resulting in a collision between the automobile and the cow. After the impact the Wheatley vehicle came to a complete stop. The Womack vehicle, following the Wheatley vehicle at approximately a distance of 250 feet, was in the process of passing the Wheatley vehicle when Wheatley began his evasive maneuvers. When Wheatley turned to the left, Womack turned to the right, whereupon the Wheatley vehicle also moved to the right. When Wheatley hit the cow and came to a stop, Womack applied her brakes but struck the rear end of the Wheatley vehicle.
Both motorists were proceeding in a safe manner and acted reasonably under the circumstances. A motorist is not charged with the duty of guarding against striking an unexpected or unusual obstruction which he has no reason to anticipate he will encounter on the highway. Wheatley, traveling on a closed range highway, had no reason to expect the cow to be present *229 on the roadway. Furthermore, Womack took reasonable precautions to avoid this accident once the danger appeared. Neither driver was negligent and the sole cause of the accident was the sudden appearance of the cow on the highway.
The next issue is the ownership of the cow. Our review of the evidence convinces us that plaintiffs established by a preponderance of the evidence the cow belonged to Mrs. Robertine Rhymes Cobb and that the trial court was in error in holding otherwise.
The most significant testimony is that of Billy Flint, the State Livestock Brand Inspector, who testified he was familiar with the Rhymes' brand, having seen animals go through the livestock auction sales in the area which he works. Although the brand was not clear from the outside, he cut off that portion of the hide containing the brand and testified he could tell by looking at the skin from the underside that the brand was an "R" and was the Rhymes' brand. Deputy Mercer testified he saw the brand on the cow and although it was blotched and not entirely clear it appeared to be a "P" or an "R". Deputy Shipley testified he saw it and it was smudged and not plain but that it looked like a "P" or "R" but he could not make it out for sure. Travis Brooks testified he looked at the brand and it definitely was an "R".
The only significant evidence to the contrary is the testimony of Mrs. Cobb's cattle foreman, Leroy Coleman, who arrived at the scene of the accident after the part of the hide bearing the brand had been removed. He examined the cow for a side brand and found none. His testimony was that if this had been one of their cows it would have contained a side brand in addition to the "R". The fact that the cow should have had a side brand was corroborated by Mrs. Cobb, but this testimony does not overcome the positive testimony of Flint, corroborated by other testimony, that the cow had the brand "R".
Significantly corroborative of Mrs. Cobb's ownership of the cow is that the Rhymes family owned the land on both sides of the highway for a considerable distance at the point of the accident. There was no evidence that any other cattle owner in the area had a similar brand, nor was there evidence that this cow, if it had once belonged to Mrs. Cobb, had been sold to someone else. It was not shown that any other cattle owners had any black cattle in the immediate vicinity. Although most of Mrs. Cobb's black cattle were pastured in another area, it was shown that some black cattle could have been in this area.
Having found the cow belonged to Mrs. Cobb, the next issue is whether Mrs. Cobb is liable for the damages resulting from the presence of the cow on the highway. Highway 15 is one of the highways listed in LSA-R.S. 3:2803 which provides that no person owning livestock shall knowingly, willfully or negligently permit his livestock to go at large upon certain highways.
LSA-C.C. Art. 2321 provides in part:
"The owner of an animal is answerable for the damage he has caused;...".
Under the jurisprudence applying the code article and statute, the owner of an animal is responsible for damage which it causes if there is any negligence, however slight, on his part. Where an animal has been the cause of damage, the burden rests upon the owner to exculpate himself of even the slightest degree of negligence. The burden placed upon the owner of an animal by these legal principles is not insubstantial but requires him to establish by proof of facts in a given case his complete freedom from any negligence of even the slightest degree to which might be attributed the action of the owned animal by which damage is caused to another. Kennedy v. Frierson, 142 So.2d 838 (La.App. 2d Cir. 1962).
*230 A number of cases arising out of highway accidents involving livestock have expressed the rule as imposing upon the owner of the livestock the burden of freeing himself from negligence by showing that he has taken every precaution expected of a reasonably prudent individual to prevent his livestock from leaving their confines and roaming at large. Primeaux v. Kinney, 256 So.2d 140 (La.App. 3d Cir. 1971).
Other cases have expressed the rule as imposing the burden upon the owner of the animal to show when, where and how the animal escaped from its enclosure, that is, his freedom from fault, even in the slightest degree. Long v. Travelers Insurance Company, 150 So.2d 52 (La.App. 2d Cir. 1963); Colomb v. McDonald, 131 So.2d 84 (La.App. 3d Cir. 1961); Parker v. Young, 122 So.2d 699 (La.App. 1st Cir. 1960); concurring opinion in Ross v. Del Valle, 277 So.2d 163 (La.App. 3d Cir. 1973).
In the instant case the preponderance of the evidence is that Mrs. Cobb took reasonable and prudent steps to maintain her fences in good condition. She had full-time employees in connection with her cattle operation whose duties included regular inspection of the fences. The fences were inspected at least once a week by the foreman who rode the fences on horseback. The fences were of reasonably substantial construction. The pasture fences along Highway 15 consisted of wire mesh topped with two strands of barbed wire and the back or cross fences consisted of four strands of barbed wire. A supply of materials was kept on hand for repairing fences as needed.
After the accident the fences were inspected to some extent by the foreman and by Dr. and Mrs. Cobb and found to be in generally good condition, except adjacent to soybean or cotton fields where cattle were not pastured. While the fences were in generally good condition, the extent of the inspection and other evidence was not sufficient to negate the possibility of there being some place along the miles of fences where a cow could get out.
Mrs. Cobb met her burden of proving she took the precautions expected of a reasonably prudent individual to prevent her livestock from leaving their confines and roaming at large. If that is the sole test to be applied then she is not liable.
On the other hand, there is no evidence whatsoever in the record explaining how the cow got out of its confines and onto the highway. If defendant has the burden of proving where, when and how the cow escaped from the enclosure, she has failed to meet that burden and is liable.
The issue then narrows down to whether the defendant has the burden of proving how the cow escaped in order to exculpate herself from negligence and liability. In most of the cases holding a defendant liable for damage caused by livestock roaming at large, the courts have found specific acts of negligence. Likewise, in most of the cases where defendants have avoided liability, the courts have found a specific explanation of how the livestock escaped through no fault of the defendant.
Probably the closest case in point to the instant case is Primeaux v. Kinney, supra, in which there was no evidence of how the bull escaped but there was convincing evidence the owner exercised reasonably prudent precautions to keep his livestock confined. The Third Circuit, in an opinion by Judge Domengeaux, held the defendant successfully rebutted the presumption of fault imposed upon him. In a later case, Ross v. Del Valle, supra, the same court, in a majority opinion, held the defendants failed to sustain their burden of proving their freedom from negligence on a finding that the fence was not actually in good condition. Judge Domengeaux, in a concurring opinion, agreed with the result but for different reasons. He concluded that notwithstanding the defendant had taken every precaution expected of a reasonably prudent individual and notwithstanding the fact the fences were in generally good condition, the defendants failed to carry the burden of showing when, where and how *231 the animal escaped and, therefore, failed to carry their burden of proving their freedom from fault even in the slightest degree.
We conclude the better rule is that the defendant must not only show he has taken all reasonably prudent precautions to enclose his livestock, but must also explain the presence of the livestock on the highway by showing how the animal escaped in order to overcome the presumption of negligence and to prove freedom from fault in the slightest degree. As pointed out by Judge Hardy in his opinion in the Kennedy case, a fence, like a chain, is only as strong as its weakest link, and a general showing of fences in good condition does not negate the possibility of some defect which could have been discovered and remedied by the exercise of reasonable precaution and inspection. The defendant is in the better, and usually sole position to explain how the livestock got out of their enclosure and onto the highway and in the absence of such proof general evidence as to reasonable precautions is not sufficient.
The conclusion of this Court is, then, that defendant has failed to explain where and how her cow escaped and, therefore, has failed to exculpate herself from negligence and is liable for the damages caused by the presence of the cow on the highway.
Having found the defendants Mrs. Cobb and her insurer liable, it becomes necessary to fix the amounts of the awards to plaintiffs.
Wanda M. Womack suffered a moderate strain in the lower back region and a torn cartilage in her right knee requiring surgery for its removal. She was hospitalized initially for more than a week after the accident in July, 1971. The surgery was done in January, 1972. She was discharged in April, 1972. This Court awards her $1,130.65 for medical expenses as stipulated to at trial, and $6,000 for pain and suffering. At the time of the accident, Wanda Womack was working as a beautician at a shop where she had worked for about five months on a commission basis. She testified she earned $75 to $80 some weeks and less other weeks. She did not earn as much as $600 during the five month period, filed no income tax return, and had no record of actual earnings. Although she did not go back to work until a year after the accident it was not established she was disabled during this entire time. The evidence is sketchy but it is evident she experienced some loss of earnings. We fix the amount at $1,000.
Billie Womack Brooks suffered a laceration of the lower left leg, requiring a skin graft, a hematoma of the left fore-head and bruises to her chest, both hips and legs. She was in the hospital initially for about a week and the skin graft surgery was performed in September. Treatment continued until December. Medical expenses were stipulated to be $2,045.80. For pain, suffering and slight disfigurement an award of $5,000 will adequately compensate plaintiff. Mrs. Brooks was employed as a beautician prior to the accident and earned $45 to $50 weekly. Again the evidence as to loss of earnings is incomplete, but an award of $1,000 should compensate plaintiff for this loss.
Travis Brooks received a very minor injury as a result of the collision, consisting of an abrasion near one of his eyes. This Court awards to Travis Brooks, individually, an amount of $67.50, the medical expenses he incurred as stipulated in the record, and $100 for pain and suffering. Additionally, he is entitled to recover the amount of medical expenses incurred by his wife, Billie Womack Brooks, and by his children, Kimberly and Michael.
Kimberly Brooks, the minor daughter of Travis Brooks, suffered a fracture of the right leg requiring closed manipulation and the wearing of a cast for a nine or ten week period. She wore corrective shoes for some time thereafter due to previously existing conditions which may have *232 been aggravated by the injury. She had substantially recovered in October and was discharged in December. The doctor testified there was perfect alignment of the bones and no permanent disability. Her medical expenses were stipulated to be $510.65. To Travis Brooks, as administrator of the estate of Kimberly Brooks, we award $5,000 for her pain and suffering.
Michael Brooks, minor son of Travis Brooks, suffered either a bruise or abrasion near his right eye. There was no medical testimony in the record as to his injuries. His medical expense was $62. The award for pain and suffering is fixed at $100.
Johnny Ray Womack's injuries consisted of a broken toe and bruises to his forehead, hip and chest area. He was not hospitalized but his injuries were painful and disabling for a period of time. We award $65.18 as stipulated in the record for medical expenses incurred and $1,000 for pain and suffering. As a result of the accident Mr. Womack was unable to work on his farm and was required to employ an additional laborer to perform his normal duties. For this expense we award $400. Mr. Womack's automobile was damaged and he is entitled to recover the $100 deductible amount as specified in his insurance policy on the automobile.
For the reasons assigned, the judgment of the district court is affirmed insofar as it rejected plaintiffs' demands against State Farm Mutual Automobile Insurance Company, Mrs. Pearl Roark Rhymes and Mrs. Jane Rhymes Oliver. The judgment of the district court is otherwise reversed and judgment is hereby rendered in favor of plaintiff's against defendants, Mrs. Robertine Rhymes Cobb and United States Fidelity and Guaranty Company, in solido, as follows:
(1) In favor of Wanda M. Womack in the sum of $8,130.65;
(2) In favor of Billie Womack Brooks in the sum of $6,000;
(3) In favor of Travis Brooks, individually, in the sum of $2,785.95;
(4) In favor of Travis Brooks, as administrator of the Estate of Kimberly Brooks, in the sum of $5,000;
(5) In favor of Travis Brooks, as administrator of the Estate of Michael Brooks, in the sum of $100; and
(6) In favor of Johnny Ray Womack in the sum of $2,155.18;
all of said sums to bear legal interest thereon from date of judicial demand until paid. All costs of this proceeding, including the cost of appeal, are assessed to the defendants named above in solido.
Affirmed in part, reversed in part, and rendered.